107 F.3d 3
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
GENERAL STAR INDEMNITY COMPANY, Plaintiff-Appellee,
v.
RED APPLE SUPERMARKETS, INC., Ethel Bernstein and Irwin
Bernstein, Defendants-Appellants.
 No. 96-7663.
 United States Court of Appeals, Second Circuit.
 Feb. 21, 1997.
 
 1
 DOUGLAS MENAGH, Menagh, Trainor, Mundo & Falcone, P.C., New York, NY.
 
 
 2
 JOHN A. MCMANUS, Conway, Farrell, Curtin & Kelly (Anne Patrice Richter on the Brief), New York, NY.
 
 
 3
 Present JACOBS, CALABRESI, LAY,* Circuit Judges.
 
 
 4
 This case arises out of an insurer's disclaimer of coverage following its policyholder's refusal to tender its self-insured retention (SIR) upon the insurer's request, as required by a clause in the SIR endorsement. The district court granted declaratory judgment, ruling that General Star Indemnity Company had no duty to defend or to indemnify the policyholder, Red Apple Supermarkets, for damages arising out of an underlying lawsuit against Red Apple.
 
 
 5
 In a nutshell, Red Apple has a $100,000 per occurrence SIR under a $1 million per occurrence liability insurance contract issued by General Star. This contract includes a clause in the SIR endorsement, Clause IV(C), which states:
 
 
 6
 The Company [General Star] shall have the right to assume charge of the defense and/or settlement of any claim or suit brought against the insured [Red Apple] and, upon written request from the company, the insured shall tender such portion of the self-insured retention as the company may deem necessary to complete the settlement of such claim or suit.
 
 
 7
 (emphasis added.)
 
 
 8
 As recounted by the district court, the underlying case was a slip and fall in which a customer suffered serious injury when she failed to negotiate a torn and improperly-laid floor mat at the entrance to one of the policyholder's supermarkets. Red Apple defended the action and its retention while General Star made repeated demands for information and opportunities to associate in the defense, overtures that were in most instances ignored by Red Apple and its retained counsel.
 
 
 9
 At various points, General Star became aware that the plaintiff in the underlying action had offered to settle for $200,000; that the plaintiff, having received no response from Red Apple as to her earlier offer, had upped her settlement demand to $600,000; and that Red Apple's own doctor had concluded that the plaintiff's injuries were substantial and permanent. These discoveries, inter alia, prompted and are reflected in an exchange of a series of letters between Red Apple and General Star. This correspondence supplies virtually all of the remaining factual background required to resolve this appeal, except for the fat that after the disclaimer of coverage, a jury returned a verdict against Red Apple of $1.85 million. We set forth here the relevant passages from the correspondence:
 
 
 10
 [From General Star to Red Apple, 6/19/92] In February of 1992, we discussed [claims including the slip and fall at issue in this case] and you promised that defense counsel would carbon copy General Star on all future reports and provide information which would update my files. As of this date, I have not received further correspondence from your office or from the defense attorneys assigned.
 
 
 11
 [From Red Apple's defense counsel to General Star, 10/28/92] Please be advised that the plaintiff's attorney has made a motion for leave to place this case on the trial calendar and for a special preference based upon the plaintiff's age.... As of the present date, the plaintiff's attorney has not made a settlement demand, and we have not received any settlement authority from Red Apple Supermarkets.
 
 
 12
 [General Star to Red Apple, 8/11/93] Noting that this claim is now on the calendar, and will probably go to trial this fall, I would respectfully request that you immediately apprise me of your dispositive plan.
 
 
 13
 [Red Apple to General Star, 8/27/93] Our plan is to settle the case if we can arrive at a reasonable number with the plaintiff and if we receive reasonable contribution from the co-defendant. I have not yet received the demand from the plaintiff, but I will request the same in order to begin exploring settlement.
 
 
 14
 [General Star to Red Apple, 9/2/93] On August 10, 1993, I spoke with defense counsel and he advised me that the claimant's initial demand is $200,000. Please advise how you plan on responding to this demand.
 
 
 15
 [Red Apple to General Star, 9/16/93] Plaintiff's demand has not been communicated to me, therefore I have not had any occasion to consider it. Obviously, this case is worth nothing near that number. Subject to my further review of the medicals, I would estimate that the case is worth between $15,000 and $50,000.
 
 
 16
 [General Star to Red Apple's counsel, 9/22/93] Enclosed please find a copy of Red Apple's September 16, 1993 letter. As you will note, [Red Apple's general counsel] claims you have not spoken with him about the claimant's demand. Therefore, I would request that you speak with him immediately about this demand and the defense's offer.
 
 
 17
 [Red Apple's counsel to General Star, 9/20/93] Please be advised that we were instructed by Red Apple Supermarkets to return their file to their office as we are being substituted out as their attorney in this matter. We ... suggest that you contact [Red Apple's General Counsel] for any further information herein.
 
 
 18
 [General Star to Red Apple, 9/23/93] [P]lease advise who your current defense counsel is, and how you plan on responding to the claimant's settlement demand.
 
 
 19
 [Red Apple to General Star, 9/28/93] [A]fter indicating identity of new counsel I've still not seen any demand from the plaintiff, and as soon as I am in receipt of the same, I will advise you of our response.
 
 
 20
 [Red Apple's counsel to General Star, 12/20/93] Pursuant to our telephone conversation please note that the plaintiff's attorney have [sic] not tendered a demand with respect to the captioned matter. Once I learn of a demand, I shall convey the same to you.
 
 
 21
 [Red Apple's counsel to General Star, 2/4/94] The above matter has been scheduled for trial on Tuesday, March 8, 1994.... The plaintiff has made a demand of $650,000.00 to settle this matter. No offer was made in response to that amount. .... I shall forward you an assessment of the case upon the completion of the pending investigation.
 
 
 22
 [General Star to Red Apple, 2/22/94] Recent information from defense counsel has revealed that this matter is set for trial on March 8, 1994 and that the claimant's demand is currently $650,000. It has also been noted that you have failed to engage in any type of settlement of negotiation whatsoever.
 
 
 23
 Based upon the above information, we request that you immediately tender your $100,000 [emphasis in original] Self-Insured Retention. This must be confirmed in writing immediately.
 
 
 24
 * * *
 
 
 25
 Accordingly, please forward to my attention your draft, made payable to General Star Management Company, in the amount of $100,000. Upon receipt of same, and as of the date the check is received, General Star will assume the expense to defend this matter on a go forward basis [emphasis added].
 
 
 26
 Please note that if you fail to immediately cooperate with us, you will be placing the coverage protection afforded by your policy in jeopardy [emphasis added].
 
 
 27
 Should you have any questions, please feel free to contact me. Moreover, please note that we have retained the below noted counsel to act as our legal representatives throughout the duration of this litigation.
 
 
 28
 [Red Apple to General Star, 2/25/94] Please be advised that we reject your demand for tender of the $100,000 retention. At the present time, there is little evidence that our exposure in this case is likely to exceed the retention level. We do not consider plaintiff's demand ... [a]n accurate barometer in these cases.
 
 
 29
 While they are pleased to have the assistance and input of counsel in this case, please caution counsel the payer to have absolutely no contact with plaintiff's attorney, as that will only encourage plaintiff's attorney to place an unreasonably high value on this case.
 
 
 30
 I also must advise you that our reading of the policy differs from yours. I find nothing in the policy which requires us to remit the balance of the self-insured retention upon your assumption of the defense of the case. The policy purports to give you the right to step in and settle the case, but I must caution you that you will be subject to a standard of reasonableness. That is, you cannot simply offer to settle the case for $99,000 in order to protect your own interests.... [P]lease be advised that in the event you step in and settle this case with plaintiff, we will expect you to exhaust the claim over against the supplier of the floor mat before looking to us for any contribution for any such settlement [emphasis added].
 
 
 31
 [Red Apple to General Star, 5/23/94] [forwarding report from Red Apple's counsel which states:] [Our designated doctor] did not help matters as his report unequivocally states that her injuries are related to the accident and that there will be permanent impairment to the left shoulder.
 
 
 32
 Thereupon General Star disclaimed coverage and commenced a declaratory judgment action in the Southern District of New York. After a two-day bench trial, Judge Cote announced her findings and conclusions from the bench. The critical findings are as follows:
 
 
 33
 I find that [Clause IV(C) ] gives General Star the right to assume charge of the defense or settlement of a lawsuit at any time that it chooses to exercise that right, and that should it decide that it is necessary to settle a case, it may in conjunction with the assumption of the defense of an action, make a written demand upon Red Apple for the self-insured retention. Red Apple must therefore tender or provide the amount of the SIR demanded up to $100,000 per occurrence, and support General Star as it takes over control of the litigation. Moreover, the evidence at trial has proven that General Star exercised its right to demand tender of the hundred thousand dollars in this case, consistent with the obligations of good faith and fair dealing that accompany every contractual obligation.
 
 
 34
 * * *
 
 
 35
 [The] demand was made only after Red Apple had failed repeatedly to keep General Star apprised [of] developments in the litigation, and had failed to enter into settlement negotiations in the case where General Star clearly had exposure.... [Once Red Apple] decides [ ] that it would prefer to be only partially self-insured and carries insurance that will cover a portion of a judgment that is rendered, it had, under its contract of insurance, to cooperate in good faith with General Star, an obligation which it failed to adhere to in this case.
 
 
 36
 * * *
 
 
 37
 I therefore find the following: The failure of Red Apple to tender the SIRs by General Star and its refusal to render the defense of the [underlying matter] constituted, in the context of the facts presented in this case, material breaches of the indemnity agreement. In view of those breaches, each of which is material and sufficient for denial of coverage, there is no coverage under the policy for General Star, for the damages sought by General Star. General Star has neither a duty [to] defend nor a duty to indemnify Red Apple with respect to [the underlying case].
 
 
 38
 Judge Cote also noted that the verdict against Red Apple in the underlying case was $1.85 million, but that the verdict had been set aside, and a new trial ordered.
 
 
 39
 We affirm for essentially the reasons stated by Judge Cote. We go on to address certain of Red Apple's contentions on appeal.
 
 
 40
 First. Red Apple claims that General Star had no power to "rescind" the contract. Red Apple misperceives the nature of the relief. General Star is not seeking rescission, and is not tendering the return of the premium. Judge Cote concluded that Red Apple had committed a material breach of duty under Clause IV(C), which is a breach of the duty to cooperate. Such a breach routinely supports the denial of coverage as to the claim.
 
 
 41
 Second. Red Apple claims that there is an ambiguity in the obligation to tender. The parties do not dispute that "tender" entails the actual turning over of the cash. But Red Apple contends that there is an ambiguity in Clause IV(C) as to when the insurance company has the power to enforce the tender. General Star points to the phrase "as the company may deem necessary." Red Apple emphasizes that the tender is required only "to complete the settlement"; that the insurance company's reading would allow it to collect another $100,000 whenever a claim arose (as if it were simply an additional premium); and that the parties' conflicting views demonstrate that Clause IV(C) must be ambiguous.
 
 
 42
 Taking Red Apple's last argument first, conflicting arguments of counsel do not constitute evidence of ambiguity. See, e.g., SSC Corp. v. Town of Brookhaven, 638 N.Y.S.2d 749, 751 (2d Dep't 1996). Moreover, Red Apple is not in a position to complain about any imprecision in the nature of the language of the clause. General Star's power to demand tender under Clause IV(C) is subject to a duty of good faith and fair dealing that inheres in all contracts. Judge Cote's findings richly support the conclusion that General Star's demand for tender was reasonable when made. We particularly note: 1) the escalating settlement offers; 2) Red Apple's announcement that it had no intention of negotiating because it thought the claim should not exhaust the SIR; 3) Red Apple's position that it had no reason to negotiate until the manufacturer of the floor mat paid up; and 4) most telling, Red Apple's view (implicit in its correspondence, and express in its appellate brief and at oral argument) that the insurer's proper course of action was to take over the defense of the case, and then to sue Red Apple for the $100,000. We think that there is ample support for the view that General Star's demand for tender was not premature, or in bad faith, or unreasonable.
 
 
 43
 For substantially the reasons stated in Judge Cote's opinion, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation